**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4309**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TERRY WAYNE SEALEY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the District of
South Carolina, at Florence.  R. Bryan Harwell, District Judge.
(4:05-cr-00901-RBH-1)

———————

Submitted:  September 27, 2006     Decided:  October 24, 2006

———————

Before WILLIAMS, MICHAEL, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Ray Coit Yarborough, Jr., Florence, South Carolina, for Appellant.
Reginald I. Lloyd, United States Attorney, Alfred W. Bethea, Jr.,
Assistant United States Attorney, Florence, South Carolina, for
Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Terry Wayne Sealey pled guilty to possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (2000), and was sentenced to a term of ninety-seven months imprisonment. Sealey appeals his sentence, contending that the district court erred in applying a cross reference to U.S. Sentencing Guidelines Manual § 2A2.1(a)(2) (2005) (Assault with Intent to Commit Murder; Attempted Murder), rather than to USSG § 2A2.2 (Aggravated Assault), and in refusing to depart downward based on the victim's conduct, USSG § 5K2.10, p.s. We affirm.[1]

In October 2004, Sealey and his friend, Charles Cribb, went to the home of Terrance Ford because they believed Ford had acquired drugs that had been stolen from Sealey. When they confronted Ford outside his house and asked him to come with them, Ford displayed a knife and refused to go with them. A few days later, Sealey and Cribb were at a club when Ford stopped there. Sealey approached Ford in the parking lot, and an argument followed during which Ford drew a .22 caliber pistol. Sealey retreated to his vehicle. Cribb got a .22 caliber rifle out of the trunk of Sealey's vehicle and handed it to Sealey, who fired repeatedly at Ford and hit him in the abdomen, buttocks, right hand, left wrist,

---

[1]Sealey also contested the district court's refusal to depart downward, but in a letter to this court, has abandoned the issue.

- 2 -

and right thigh.[2]  Ford was taken to the hospital, where he underwent surgery for serious abdominal injuries.

The guideline applicable to the offense of conviction was USSG § 2K2.1.  However, the probation officer recommended application of the cross reference in § 2K2.1(c)(1), which directs that, under USSG § 2X1.1, when the firearm was used in connection with an attempt, the base offense level and adjustments for the intended offense should be used if the resulting offense level is higher.  The probation officer applied USSG § 2A2.1 (Attempted Murder).  Under § 2A2.1(a)(2), the base offense level was 27.  The probation officer added a four-level enhancement under subsection (b)(1)(A) because the victim sustained permanent or life-threatening injuries.  This calculation resulted in an adjusted offense level of 31.  With a three-level adjustment for acceptance of responsibility, the final offense level was 28.[3]  Sealey was in criminal history category III, which gave him a recommended advisory guideline range of 97-121 months, reduced to 97-120 months because the statutory maximum for the § 922(g) offense was ten years.  See USSG § 5G1.1(c)(1).

Sealey objected to application of the cross reference to § 2A2.1.  At the sentencing hearing, defense counsel argued that

_____

[2]According to the presentence report, Sealey fired at Ford at least eleven times.

[3]Had the cross reference not been applied, the final offense level would have been 21.

the cross reference should be to the guideline for aggravated assault because Ford had displayed a gun first. The district court determined that the uncontested facts established malice aforethought on Sealey's part, and an intent to commit murder. The court then decided that it would not depart downward based on Ford's conduct, as Sealey requested, but that it would consider the possibility that Ford's conduct might have contributed, although not significantly, to provoking Sealey's attempted murder of Ford. After considering the advisory guidelines and the factors set out in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006), the court imposed the minimum guideline sentence of ninety-seven months.

On appeal, Sealey argues that the district court erred by making a cross reference to the guideline for attempted murder, § 2A2.1, instead of to the guideline for aggravated assault, § 2A2.2.

When the facts are not contested, the issue is a legal one and our review is de novo. United States v. Butner, 277 F.3d 481, 488 (4th Cir. 2002). Sealey argues that the cross reference to the guideline for attempted murder was error because there was no evidence that he intended to kill Ford apart from his prior confrontation with Ford over the missing drugs and the number of shots he fired at Ford.[4] He contends that the only reasonable

---

[4]He also suggests that the government mistakenly misrepresented the facts by stating that Sealey went to the club looking for Ford. Regardless of whether the government was clear

- 4 -

inference is that he acted in response to Ford's display of a firearm. He relies on two cases where the aggravated assault guideline was applied even though, in his view, the evidence established actual malice. In United States v. Terry, 86 F.3d 353 (4th Cir. 1996), two co-defendants were convicted of the assimilated Virginia crime of shooting into an occupied vehicle. The victim was not injured, but his vehicle sustained considerable damage. Id. at 355. The issue the defendants raised on appeal was whether the court should have applied USSG § 2B1.3(a), the guideline for property damage or destruction. Terry thus provides no guidance in this case. Sealey also relies on dicta in United States v. Goodman, No. 94-9663, 1995 WL 58558 (4th Cir. Feb. 14, 1995) (unpublished). The case has no precedential value and would not be helpful if it did, as it does not establish that § 2A2.2 should have been applied in Sealey's case.

Murder is defined in 18 U.S.C.A. § 1111 (West Supp. 2006) as "the unlawful killing of a human being with malice aforethought." To show that malice is present, the government is not required to show an intent to kill or injure. United States v. Williams, 342 F.3d 350, 356 (4th Cir. 2003) (citing United States v. Fleming, 739 F.2d 945, 947 (4th Cir. 1984)). Instead, "malice aforethought may be established by evidence of conduct

about the sequence of events, the district court reviewed the presentence report carefully, and stated the facts accurately in making its ruling.

- 5 -

which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." Id. (internal quotation and citation omitted).

In this case, Sealey's conduct in shooting Ford multiple times was at best reckless and wanton, and demonstrated a gross deviation from a reasonable standard of care. The district court did not err in inferring that Sealey was aware that his conduct created a serious risk that Ford would be killed, and in therefore applying the cross reference to § 2A2.1(a)(2).

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED